UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAIMA, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>MYRIAD FRANCE, SAS,<br><br>          Defendant. | CASE NO. C12-1166JLR<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

This matter comes before the court on a motion to dismiss brought by Defendant Myriad France, SAS ("Myriad"). (Mot. (Dkt. # 22).) This case involves a license agreement between Plaintiff Raima, Inc. ("Raima"), a Seattle-based maker of database management software and Myriad, a French software and app provider in the mobile phone sector. (Compl. (Dkt. # 1) ¶¶ 10-11.) Years after the license agreement between the two companies expired, Myriad used Raima's software to develop a product for the French government and military. (*Id.* ¶¶ 20-24.) Raima brings this suit alleging copyright infringement, breach of contract, abuse of process, and malicious prosecution.

ORDER- 1

(*Id.* ¶¶ 30-56.) The court examines each cause of action in turn and GRANTS the motion with respect to Raima's claims for copyright infringement under United States law, malicious prosecution, and abuse of process, GRANTS the motion with respect to Raima's claim of French copyright infringement under the doctrine of *forum non conveniens*, and DENIES the motion with respect to Raima's claim for breach of contract.

## I. BACKGROUND

In 2004, Myriad entered into a license agreement with Raima's predecessor in interest, a company called Birdstep Technology, Inc. (*Id.* ¶ 12.) Under the agreement, Myriad obtained the right to license and distribute a copyrighted database management program called RDM Mobile 3.x and integrate it into Myriad's mobile phone application software. (*Id.* ¶¶ 13-14.) By its terms, the agreement expired on December 30, 2007. (*Id.* ¶ 14.)

Nearly four years after the agreement expired, in 2011, Myriad contacted Raima seeking to distribute the RDM Mobile 3.x code to one of its customers, a French Company called Thales Group ("Thales"). (*Id.* ¶ 20.) Thales wanted to use RDM Mobile 3.x to develop phone software designed specifically for the French government and military. (Decl. of Cyrille Amar (Dkt. # 24) ¶ 3.) The parties dispute what happened when Myriad contacted Raima: Myriad claims Raima gave assurances that no new license agreement was needed but later changed its mind (Amar Decl. Ex. B), while Raima claims it simply informed Myriad that the license agreement had expired and

required Myriad to cease distribution of the RDM Mobile 3.x code as of December 30, 2007. (Compl. ¶ 24.)

The parties do not dispute what happened next: Myriad went ahead with its project with Thales and distributed goods containing RDM Mobile 3.x. (*See id.* ¶ 21.) This took place entirely in France. (*Id.* ¶ 23.) Raima advised Myriad that without a license, its actions were illegal (*id.* ¶ 24), after which the parties made some attempt to negotiate a new license agreement (*id.* ¶ 26). When they failed to reach an agreement, Myriad sued Raima in a French court, the Commercial Court of Chambery, alleging disparagement. (*Id.* ¶ 28.) Not long after, Raima filed this suit in the Western District of Washington, arguing that the dispute must be resolved not in France but here pursuant to a forum selection clause in the licensing agreement. (*See id.* ¶ 16.) The forum selection clause states that any dispute arising out of the agreement must be resolved in Washington:

> Any dispute arising out of or related to this Agreement will be subject to the exclusive jurisdiction and venue of [state and federal courts in Washington.]"

(*Id.* Ex. A at 3.) Myriad claims that Raima's lawsuit is baseless and that in any event the dispute should be settled in France (*see* Mot.); Raima makes similar claims about Myriad's French lawsuit, arguing that it is frivolous and should be resolved in Washington (*see* Compl. ¶¶ 28-29). Accordingly, Raima brings claims for malicious prosecution and abuse of process in addition to its other claims. (*See id.*) This Rule 12 motion by Myriad seeks to dismiss some of Raima's claims for failure to state a claim and to dismiss others under the doctrine of *forum non conveniens*. (*See* Mot.)

## II. ANALYSIS

### A. Standard on a Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a)(2). The purpose of this rule is to "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

*Twombly* and *Ashcroft v. Iqbal* establish the federal civil pleading standard used to assess Rule 12(b)(6) motions. *See Twombly*, 550 U.S. at 562-63; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Under the *Twombly/Iqbal* standard, it is not enough that a claim to relief be merely "possible" or "conceivable." Instead, it must be "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim for relief is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To cross the line from conceivable to plausible, a complaint must contain a sufficient quantum of "factual matter" alleged with a sufficient level of specificity to raise entitlement to relief above the speculative level. *Twombly*, 550 U.S. at 555. The court is not bound to accept as true labels, conclusions, formulaic recitations of the elements, or legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). As the Supreme

Court said in *Iqbal*, a complaint must do more than tender "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion, a court may consider documents incorporated by reference into the complaint without converting the motion to dismiss into a motion for summary judgment. *See Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[2] (3d ed. 1999). Even if a document is not attached to the complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to it or it forms the basis of the plaintiff's claim. *See Van Buskirk*, 284 F.3d at 980; *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Here, for example, the court can consider the License Agreement between Raima and Myriad because it is mentioned explicitly in the complaint. (Compl. ¶¶ 12, 14.)

**B.   Raima's Claims for Copyright Infringement Under United States Law, Malicious Prosecution, and Abuse of Process**

Raima does not allege sufficient facts to state a claim for copyright infringement under the Copyright Act, malicious prosecution, or abuse of process. The court examines each of these claims in turn.

//

//

//

ORDER- 5

## 1. Copyright Infringement Under the Copyright Act

A claim of copyright infringement under the Copyright Act requires, at a minimum, some allegation of infringing acts that took place inside the United States. *Los Angeles News Serv. v. Reuters Tele. Int'l Ltd.*, 149 F.3d 987, 990 (9th Cir. 1998) (citing *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994)). It is settled law that the Copyright Act does not apply unless "at least one alleged infringement [is] completed entirely within the United States."[1] *Id.* Here, all of the allegedly infringing acts took place not in the United States, but in France. (*See* Compl. ¶¶ 20-23.) Neither side disputes this fact, and Raima's complaint contains no allegations of any infringing acts inside the United States. (*See* Compl.) This is fatal to Raima's copyright claims, and as such the court GRANTS with prejudice Myriad's motion to dismiss this claim. *See Los Angeles News*, 149 F.3d at 990.

## 2. Malicious Prosecution

Raima's malicious prosecution claim is similarly flawed. To state a claim for malicious prosecution in a civil proceeding under Washington law, a plaintiff must allege

---

[1] There are two different theories in the federal courts for why this is so: some courts are of the opinion that federal courts lack subject matter jurisdiction over extraterritorial copyright claims, while other courts hold that infringement inside the United States is a basic element of any copyright claim that, if not alleged, defeats the claim. *See Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1143-44 (N.D. Cal. 2011) (explaining both approaches). Under either of these theories, it does not make sense to argue, as Raima does, that a forum selection clause operates as consent to liability for acts of infringement occurring outside of the United States (*see* Resp. (Dkt. # 28) at 10-11); this is because parties can neither consent to federal subject matter jurisdiction nor consent to expanding the reach and scope of an Act of Congress. *Morongo Band of Mission Indians v. Cal. State Bd. Of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (parties cannot consent to subject matter jurisdiction); *Kolbe v. Trudel*, 945 F. Supp. 1268, 1270 (D. Ariz. 1996) (forum selection clause does not make extraterritorial infringement actionable under Copyright Act).

that: (1) the defendant initiated or continued a prosecution; (2) there was no probable cause to institute or continue the prosecution; (3) the prosecution was instituted or continued with malice; (4) the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; (5) the plaintiff suffered injury or damage; (6) there was an arrest or seizure of property; and (7) the plaintiff suffered special injury, meaning injury which would not necessarily result from similar causes of action. *Clark v. Baines*, 84 P.3d 245, 248-49 (Wash. 2004). Here, Raima simply does not allege (4) or (6): that the proceedings terminated in its favor (the proceedings in question, located in France, appear to be ongoing), or that there was an arrest or seizure of property. (*See* Compl.) Nor does anything else in the parties' submission suggest that either of these things are actually true. Without these allegations, Raima has not stated a claim for malicious prosecution, *Clark*, 84 P.3d at 248-49, and the court GRANTS Myriad's motion to dismiss this claim with prejudice.

    3. Abuse of Process

To state a claim for abuse of process, a plaintiff must allege that: (1) the defendant had an ulterior purpose to accomplish an object not within the proper scope of the process; and (2) the defendant performed an act in the use of legal process not proper in the regular prosecution of proceedings. *Batten v. Abrams*, 626 P.2d 984, 988 (Wash. Ct. App. 1981). Raima alleges that Myriad's ulterior purpose in filing the French lawsuit was to "extort a license from Raima," and that it attempted to accomplished this purpose by using "the existence of the lawsuit to pressure Raima into providing a license for free to Myriad and Thales . . . ." (Compl. ¶¶ 53-54.) In other words, Raima alleges that

Myriad brought a baseless lawsuit and then committed abuse of process by attempting to settle a claim it knew was baseless.

Many courts have held that attempts to settle a case, even a frivolous case, cannot form the basis of an abuse of process claim. *E.g.*, *JSJ Ltd. P'ship v. Mehrban*, 141 Cal. Rptr. 3d 338, 346 (Cal. Ct. App. 2012); *Hoffman v. Asseenontv.com, Inc.*, 962 A.2d 532, 542 (N.J. Super. A.D. 2009); *Wallace v. Mercantile Cnty. Bank*, 514 F. Supp. 2d 776, 793 (D. Md. 2007). These courts have reached this result for different reasons, all of which the court finds persuasive. *E.g.*, *THI of New Mexico at Valle Norte v. Harvey*, 802 F. Supp. 2d 1257 (D.N.M. 2011) (concluding that attempts to settle a case are not acts that are improper in the regular prosecution of proceedings); *Hoffman*, 962 A.2d at 542 (concluding that settlement negotiations are not part of the court's "process"); *Wallace*, 514 F. Supp. 2d at 793 (explaining that there can be no abuse of process for simply seeing a lawsuit through to its "authorized conclusion," and that attempting to negotiate a settlement is merely carrying a suit through to its "authorized conclusion").

The approach of these courts appears to be the majority approach, and there is no authority to suggest Washington would diverge from it. Indeed, although Washington case law has never squarely addressed this question, the little authority that does exist exists suggests Washington would follow the majority position. For example, the Washington Court of Appeals has said that for abuse of process, "there must be an act after filing suit using legal process empowered by that suit." *Saldivar v. Momah*, 186 P.3d 1117, 1130 (Wash. Ct. App. 2006). Certainly, an offer of settlement does not match this description. An offer of settlement does not use legal process; moreover, it is

1  available even before filing a suit unlike, say, a subpoena or an interrogatory request.
2  This suggests Washington would follow the majority approach. And while Raima is able
3  to cite one case reaching the opposite result by applying Montana law, *see McCullough v.*
4  *Johnson, Rodenburg & Lauinger*, 637 F.3d 939, 956 (9th Cir. 2011), Raima cites no
5  authority indicating that Washington would take the Montana approach. (*See* Resp. (Dkt.
6  # 28) at 29-31.) As such, the court finds that under Washington law, Raima does not
7  state a claim for abuse of process merely by alleging that Myriad offered to settle what
8  Raima regards as a frivolous claim. The court GRANTS Myriad's motion to dismiss this
9  claim with prejudice.

10  C.   **Raima's Claim for Copyright Infringement Under French Law**

11       Next, Myriad moves to dismiss Raima's claims for violation of French copyright
12  law under the doctrine of *forum non conveniens*, a doctrine under which federal district
13  courts can dismiss cases that appear unsuitable for resolution in the United States.
14  Specifically, a federal court has discretion to dismiss a case on the ground of *forum non*
15  *conveniens* when an alternative forum has jurisdiction to hear the case, and either
16  (1) "trial in the chosen forum would establish . . . oppressiveness and vexation to a
17  defendant . . . out of all proportion to plaintiff's convenience," or (2) "the chosen forum is
18  inappropriate because of considerations affecting the court's own administrative and legal
19  problems." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429
20  (2007) (internal quotation marks, alterations, and citations omitted). In determining
21  whether to dismiss an action under *forum non conveniens*, a court must examine two
22  factors: "(1) whether an adequate alternate forum exists, and (2) whether the balance of

private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).

### 1. Adequate Alternate Forum

First, the court finds that there is an adequate alternative forum to resolve this dispute. An alternative forum is adequate when the defendants are amenable to service of process in the foreign forum and the foreign forum provides the plaintiffs with "some remedy" for their wrongs. *Lueck*, 236 F.3d at 1143. "[I]t is only in rare circumstances . . . where the remedy provided by the alternative forum . . . is so clearly inadequate or unsatisfactory, that it is no remedy at all . . . ." *Id.* (citation and internal quotation marks omitted).

Raima and Myriad do not appear to dispute that France is an adequate alternative forum. Further, Myriad presents evidence that it is amenable to service of process in France (Amar Decl. ¶ 7), and there is no serious dispute that French copyright law is capable of providing an adequate and satisfactory remedy for Raima's claims. In fact, Raima basically admits this by seeking relief under French copyright law in *this court*. (Compl. ¶¶ 44-51.) Accordingly, the court finds that the first requirement for *forum non conveniens* is met.

### 2. Balance of Private and Public Interest Factors

Next, the court must balance both private and public interest factors to determine if they favor dismissal in this case. They do.

In balancing factors to determine whether to apply *forum non conveniens*, courts consider the following private interest factors:

> (1) [T]he residence of the parties and witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of a judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck*, 236 F.3d at 1145 (internal quotation marks and citation omitted).

In this case, most of these private interest factors are neutral, although several slightly favor applying *forum non conveniens*. In either possible forum, France or the Western District of Washington, one of the parties will have to travel to the other's home country. This will cause similar inconvenience to either party, both parties having already hired attorneys in the other forum, and will precipitate similar practical problems for either party. In either case, witnesses will be required to travel, this will cost money, and attorneys will be required to navigate the thicket of Franco-American compulsory process to ensure testimony. Likewise, in either forum, attorneys will be required to journey through the law of inter-country judgment enforcement, although if Raima prevails in France it will likely be relatively easy to enforce a French judgment. It is not known at this time precisely which witnesses will be important to the case because it is not clear to the court at this early stage of litigation what the major issues in the case will be—this depends on how the parties argue the case going forward. It is also not known whether particular pieces of physical evidence (e.g., the allegedly infringing phones and the contract between Thales and the French Government) will be allowed to leave France or will even be needed in the litigation. (*See* Amar Decl. ¶ 6.) This depends on future circumstances about which the court has very little information at this time. In sum, the

ORDER- 11

private factors are mostly neutral but slightly favor applying *forum non conveniens* and dismissing Raima's French copyright claims.

On the other hand, the public interest factors weigh strongly in favor of applying *forum non conveniens*. Courts generally consider the following public interest factors: (1) the local interest of the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to the forum. *Lueck*, 236 F.3d at 1147.

First and foremost, the court has no familiarity with French copyright law. Although the need to apply foreign law is not in and of itself a sufficient reason to dismiss based on *forum non conveniens*, it favors dismissal. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 n.29 (1981). Moreover, French copyright laws are written to be applied within France's civil law system, not in the common law courts of the United States. It is not clear how the court would effectively administer these laws in a common law court or why it would be worth the time and effort to learn how to do so when there is another forum available that would not have this difficulty and is fully familiar with French copyright law and well-equipped to deal with it. Applying French law would also impose a major burden on the court and on a jury. *See Piper*, 454 U.S. at 259-60 ("[A] trial involving two sets of laws would be confusing to the jury."). At a minimum, the court would be required to translate French copyright law and attempt to create a judicial environment in which it would make sense to apply it. This could be incredibly costly and time-consuming, not to mention frustrating.

France also has a strong interest in this litigation. The dispute involves proprietary French Military and Government property of importance to the French Government as well as a contract between the French Government and a French company. (Amar Decl. ¶ 6.) Further, the alleged infringement was carried out by two French companies and occurred entirely in France. (*Id.* ¶¶ 4-5; Compl. ¶¶ 20-23.) Certainly, the Western District of Washington has an interest in this case given that Raima is a Seattle-based company, but France's interest is stronger, favoring application of *forum non conveniens*. Based on the above analysis, the court concludes that the public and private interest factors weigh in favor of applying the doctrine and dismissing the case.

  3. <u>Effect of Forum Selection Clause</u>

One final issue remains to be resolved before the court can dismiss the French claims: there is a forum selection clause in the licensing agreement between Raima and Myriad. As it happens, however, this clause has no effect on the court's *forum non conveniens* analysis. (*See* Compl. Ex. A at 4.) Although forum selection clauses are presumptively valid, *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972), they do not generally survive a contract's expiration.[2] *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 206 (1991). There are exceptions to this rule, but none of them apply here.

---

[2] The court rejects Raima's argument that the license agreement's "survival clause" should impact its analysis. Ordinarily, a survival clause might be relevant. However, here the survival clause in the parties' contract simply does not apply. The forum selection clause here explicitly says that contract terms only survive "termination" of the contract, not "expiration." These two terms are used differently in the contract, (*see* Compl. Ex. A at 4-6) and have different meanings. The court declines to adopt Raima's strained reading of the survival clause, which would treat "expiration" and "termination" as having the same meaning.

ORDER- 13

Under the Supreme Court's decision in *Litton*, a forum selection clause survives after a contract expires only (1) where it involves facts and occurrences that arose before expiration; (2) where an action taken after expiration infringes a right that accrued or vested under the agreement; or (3) where, under normal principles of contract interpretation, the disputed contractual right survives the expiration of the remainder of the agreement. *Id.* The only one of these exceptions that could even potentially apply here is (3), and it does not apply to Raima's copyright claim because it is not based on a disputed contractual right; copyright laws exist wholly independent of the agreement between Raima and Myriad that expired in 2007.[3] Thus, the forum selection clause does not affect the court's *forum non conveniens* analysis.

Having resolved this final issue, and for the foregoing reasons, the court holds that the balance of public and private interests favors dismissing Raima's French copyright claims so that they can be decided in France, which will provide an adequate alternate forum. Applying *forum non conveniens*, the court GRANTS Myriad's motion and dismisses Count III of Raima's complaint with prejudice.

**D.    Raima's Claims for Breach of Contract**

The only remaining cause of action is for breach of contract. Neither party requests *forum non conveniens* dismissal for this claim, nor would it likely be appropriate.

//

---

[3] For a breach of contract claim, the analysis would be different, as explained below.

ORDER- 14

To state a claim for breach of contract under Washington law, a plaintiff must show (1) an agreement between the parties; (2) that the defendant had a duty under the agreement; and (3) that the defendant breached its duty. *E.g., Newmont USA Ltd. v. Am. Home Assur. Co.*, 676 F. Supp. 2d 1146, 1154 (E.D. Wash. 2009). There is no dispute that there was a valid agreement between Raima and Myriad. Instead, the parties dispute whether Myriad had a duty under the contract even after it expired, and whether Myriad's actions breached that duty.

The court finds that Raima has stated a plausible claim for breach of contract under the federal pleading standard established in *Twombly* and *Iqbal*. First, Raima pleads facts that allow the court to infer that Myriad had a continuing duty under the parties' agreement. The agreement states that Myriad must "immediately cease" use of Raima's products when the agreement expires:

> [U]pon expiration or termination of a Product and Pricing Addendum, [Myriad France] will (and will cause its Additional Resellers to) immediately cease all use, reproduction, and distribution of the Product identified in the Addendum.

(Compl. Ex. A at 5.) This clause is straightforward: it creates a duty for Myriad to stop using Raima's products once the license agreement expires. (*See id.*) Based on this language, the court can reasonably infer that the parties intended the contract to create a continuing contractual duty not to use the RDM Mobile 3.x. It is reasonable to infer that the parties did not intend to allow Myriad to get around its contractual duty simply by ceasing to use the copyrighted material, waiting a while, then using that material again

ORDER- 15

without a new license. Thus, Raima adequately pleads the existence of a contractual duty. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

Raima also adequately pleads breach of that duty. Raima alleges numerous facts suggesting that Myriad used, reproduced, or distributed the infringing material after the license agreement expired. (*See* Compl. ¶¶ 20-21.) Raima alleges use and distribution of a specific infringing product and incidents of use and distribution under a specific contract at a specific time. (*See id.*) Certainly, this is enough to raise Raima's claim of breach above the speculative level. *See Twombly*, 550 U.S. at 555. The court rejects Myriad's arguments to the contrary, all of which are based on technical readings of the contract and on factual matter directly contradicting Raima's allegations. (*See* Mot. at 21-22.) These nuanced, fact-based arguments are not sufficient to defeat a motion to dismiss, where the court must draw all reasonable inferences in favor of the plaintiff and accept the plaintiff's non-conclusory facts as pleaded. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The court also rejects Raima's argument that it lacks personal jurisdiction over Myriad for this claim. A forum selection clause usually operates as consent to personal jurisdiction. *See S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007). Here, the forum selection clause in Raima and Myriad's agreement specifically says that "[a]ny dispute arising out of or related to this Agreement will be subject to the exclusive jurisdiction and venue of [state and federal courts in Washington]." (Compl. Ex. A at 3.) This is sufficient to conclude that Myriad has consented to personal jurisdiction. *Ross*, 504 F.3d at 1149. Ordinarily, a forum selection clause in an expired contract would not control a

ORDER- 16

dispute between the parties arising after expiration. *Litton*, 501 U.S. at 206. However, as discussed above, there are exceptions to this rule. One of those exceptions applies here. The forum selection clause applies because "under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 206. Indeed, the disputed contractual right did not even arise until the agreement expired, (*see* Compl. Ex. A at 5), and under normal principles of contract interpretation it must continue to have effect even after the agreement expires. Thus, the court concludes that Myriad consented to personal jurisdiction with respect to the breach of contract claim and, holding also that Raima states a claim for breach of contract, the court DENIES Myriad's motion to dismiss this claim.

### III.   CONCLUSION

For the foregoing reasons, the court GRANTS the motion with respect to Raima's claims for copyright infringement under United States law, for malicious prosecution, for abuse of process, and for copyright infringement under French law and DISMISSES these claims with prejudice (Dkt. # 22). However, the court DENIES the motion with respect to Raima's claim for breach of contract (Dkt. # 22).

Dated this 11th day of December, 2012.

JAMES L. ROBART
United States District Judge